Randolph Gaw (S.B. #223718)
rgaw@gawpoe.com
Flora Vigo (S.B. #239643)
fvigo@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs and Counterclaim
Defendants Local Ventures & Investments, LLC,
Dennis Lewis, Dustin Sinkey, Derek Waterman,
and Chase Smith

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LOCAL VENTURES & INVESTMENTS, LLC, DUSTIN SINKEY, DEREK WATERMAN, and CHASE SMITH<br><br>Plaintiff,<br><br>v.<br><br>OPEN FOUNDATION d/b/a Open Platform, ANGUD "KEN" SANGHA, CLEAR TECHNOLOGIES SOFTWARE INC., and APPCLARITY INC.<br><br>Defendants.<br><br>OPEN FOUNDATION d/b/a Open Platform and ANGUD "KEN" SANGHA,<br>Counterclaimants,<br><br>v.<br><br>LOCAL VENTURES & INVESTMENTS, LLC, DENNIS LEWIS, DUSTIN SINKEY, DEREK WATERMAN, and CHASE SMITH,<br><br>Counterclaim Defendants. | Case No. 3:18-CV-05581-EDL<br><br>**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS PURSUANT TO 12(b)(6)**<br><br>Judge:         Hon. Elizabeth D. Laporte<br>Hearing Date: May 7, 2019<br>Time:           9:00 a.m.<br>Courtroom:  E |

**INTRODUCTION**

Counterclaimants appear to believe that if they continually downplay Rule 8's pleading requirements, mischaracterize substantive law, and obscure or omit the true facts concerning Plaintiffs' participation in the OPEN venture, they can withstand Plaintiffs' motion to dismiss and drag them through meritless litigation.  This effort will fail.  The SACC does not allege facts in support of their conclusory assertion that part of $500,000 in supposed "software recovery expenses" is attributable to Sinkey and Smith's alleged breaches of their duties of loyalty (deletion of source code), so does not sufficiently plead proximate cause.  Counterclaimants similarly ignore the disconnect between Waterman and Smith's supposedly negligent breaches of their professional duties (poor job performance) and the nonspecific, conclusory damages they concoct in the SACC ($60,000 to replace Waterman after he left the venture and the $500,000 to replace Sinkey's source code).  And Counterclaimants still cannot point to any facts giving rise to a plausible inference that Lewis falsely promised Local Ventures would only use certain Ethereum for OPEN expenses—at most, the SACC alleges these Plaintiffs ultimately did not do what they said they would (mere non-performance), so the promissory fraud claim fails.  Counterclaimants' newly added claim for violation of the CDAFA fairs no better for various reasons, not the least of which because the SACC does not—and cannot—allege any misconduct or resulting injury occurred within California.  Finally, Counterclaimants' civil theft claims are a baseless and transparent attempt to turn their business dispute with Local Ventures into the *crime of theft* giving rise to civil treble damages claims.  Neither Plaintiffs nor this Court should be subjected to another round of amendment with respect to any of these claims.

**ARGUMENT**

**I.   COUNTERCLAIMANTS' BREACH OF THE DUTY OF LOYALTY CLAIMS FAIL.**

Regarding this claim, Counterclaimants' first respond to Plaintiffs' motion by mischaracterizing the motion as asserting that because Counterclaimants' alleged harm was incurred in response to Sinkey's copyright claims, it "fails under the Computer Fraud and Abuse Act." (Opp. at 9:24-10:5.)  Counterclaimants miss the point:  the SACC is deficient because it

1  fails to plausibly allege damages proximately caused by Sinkey and Smith's supposed loyalty
2  breaches, i.e., their purported deletion of source code.  (Mot. at 11:15-26 (citing *Synopsys, Inc. v.*
3  *Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1071 (N.D. Cal. 2018).)  *Synopsys* is analogous
4  here not because of the claim in that case (the Computer Fraud and Abuse Act), but because the
5  counter-defendants failed to sufficiently allege their damages (costs of investigating the source of
6  the breach and remedying it) were incurred as a result of violation of the Act—they would have
7  been incurred anyways as part of counter-defendants' "investigation of and response to"
8  plaintiff's allegations of copyright infringement.  *Id*.

9  Similar here, the only remotely specific facts in the SACC regarding the alleged $500,000
10 expenses are described in connection with a supposed audit of Sinkey's source code dated
11 September 12, 2018—five months after the alleged GitHub deletion, one week after Plaintiffs
12 sent Counterclaimants a demand letter and draft complaint, and the same *day* Sinkey filed his
13 copyright claims.  (SACC ¶ 50; AC ¶ 83 (demand letter sent on September 5, 2018).)  Given
14 Counterclaimants' own allegations that the code was "below commonly accepted industry
15 standards" so OPEN rewrote it from scratch and is not using any part of it, the only plausible
16 inference is that this expense would have been incurred regardless of the supposed GitHub
17 deletion.  (SACC ¶¶ 50.)  *See*, *e.g.*, *Viner v. Sweet*, 30 Cal.4th 1232, 1240 (2003) (causation
18 lacking "if the harm would have been sustained even if" the wrongful conduct had not occurred).
19 The Opposition points to a few paragraphs describing these supposed costs as "software recovery
20 expenses" to "stabilize harm" from the source code deletion, but there are no actual facts alleged
21 in support of these conclusory catchphrases.  (SACC ¶¶ 53, 86, 104, 110.)  To satisfy Rule 8,
22 Counterclaimants must allege some basic facts about how any of these costs were incurred in
23 response to the GitHub deletion in particular given that the only remotely well-pled facts in
24 SACC suggest otherwise.

25 **II.    COUNTERCLAIMANTS' NEGLIGENCE CLAIMS AGAINST WATERMAN
26         AND SMITH FAIL.**

27 The Opposition fails to address the lack of connection between Waterman and Smith's
28 alleged breaches of their professional duties and the damages that were supposedly incurred as a

proximate result.  Regarding Waterman, the SACC alleges his supposed breach consisted of his "misrepresentation about his ability to deliver introductions and ability to articulate the subject matter of the OPEN venture to investors," but the only damages allegedly incurred as a result relate to Waterman's departure from the venture.  (SACC ¶¶ 31 (alleging $60,000 in expenses in 2018 to replace Waterman); 34 (alleging Waterman departed on February 11, 2018).) Counterclaimants' argument that "[d]amages recoverable by employers for tort claims include the cost of hiring temporary replacements and costs arising from disruption of businesses affairs" does not help them.  (Opp. at 11:5-11 (citing *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 425 (2000).)  The alleged breach of fiduciary duty in *GAB* was defendant's "orchestrating the exodus" of plaintiff's employees *en masse* to plaintiff's competitor, and part of the resulting harm "included the cost of recruiting and interviewing candidates for the positions the 17 employees vacated" on short notice.  *Id*. at 413, 426.  Thus, the breach alleged (poaching employees) directly caused the harm (having to immediately replace those employees).  There is no such proximate connection alleged here.

Regarding Smith, Counterclaimants point to their duty of loyalty claim against him and the purported $500,000 expense to address Sinkey's supposedly substandard source code.  (Opp. at 11:13-22 (citing SACC ¶¶ 85-86).)  The Amended Counterclaims already contained those allegations, and all the SACC does is add them to the damages paragraph of their negligence claim.  (SACC ¶ 104.)  This expense was insufficient to allege specific damages proximately caused by Smith before, and it remains so now because his supposed professional breaches consist of "appearing inebriated at important meetings, missing deadlines . . . and performing shoddy work generally"—not writing substandard code or deleting it from GitHub (though as explained above, the SACC's allegations are deficient with respect to the latter against Smith regardless).  (ECF 60 (Feb. 26, 2019 Order) at 14:3-5; (SACC ¶¶ 38-44.)  There is no plausible connection alleged between Smith's supposed breaches of his professional duties and any "[a]ppreciable, nonspeculative, present harm" as a result.  *See Gardner v. Health Net, Inc.*, No. CV 10-2140 PA (CWX), 2010 WL 11597979, at *3 (C.D. Cal. Aug. 12, 2010).

### III. COUNTERCLAIMANTS' CLAIMS AGAINST DENNIS LEWIS FAIL.

Counterclaimants seize on a typo in Plaintiffs' motion in arguing that the SACC sufficiently pleads claims against Lewis in his individual capacity. (Opp. at 13:1-14.) Plaintiffs mistakenly state in one sentence of their motion that "at all times Lewis was acting on behalf of OPEN," instead of what the rest of this section of argument should make clear—that the Counterclaims only contain allegations that Lewis was at all times acting on behalf of *Local Ventures*. (Mot. at 14:5-26.) To satisfy Rule 8, Counterclaimants must either sufficiently allege alter ego, or they must allege facts giving rise to a plausible inference that Lewis was acting on his own instead of on behalf of Local Ventures. Otherwise, the "acts of [the] corporation"— Local Ventures—cannot be attributed to Lewis. *Cf. Kingsburg Apple Packers, Inc. v. Ballantine Produce Co.*, No. 1:09-CV-901-AWI-JLT, 2010 WL 2817056, at *4 (E.D. Cal. July 16, 2010).

### IV. COUNTERCLAIMANTS' PROMISSORY FRAUD CLAIM FAILS.

In response to Plaintiffs' argument that mere non-performance of a supposed promise by Local Ventures and Lewis is insufficient to plead fraudulent intent, Counterclaimants point to a couple of other allegations of mere non-performance. (Opp. at 14:13-25.) First, Counterclaimants argue that the Court should infer intent from these Plaintiffs' "extraordinarily" and "highly" suspicious demand for additional compensation after the Ethereum transfer. (Opp. at 14:10-22.) Other than asserting that this demand was supposedly inconsistent with what the parties had previously agreed to, Counterclaimants do not explain what is so "suspicious" about this demand, or why it suggests Local Ventures or Lewis never intended to use the Ethereum for OPEN's business expenses as "promised" on May 22, 2018. Counterclaimants reference a demand letter sent by Local Ventures' then-counsel in July 2018—more than a month after the supposed promise and transfer—also asserting Local Ventures' right to additional agreed upon compensation and stating that Local Ventures was "converting" the Ethereum pending resolution of the parties' dispute. (Opp. at 14:22-25; SACC ¶ 73.) The Opposition again fails to explain why this communication suggests these Plaintiffs' "promise" was false when made. At most, these two allegations might suggest Local Ventures or Lewis did not ultimately do what they supposedly said they would, but do not plausibly support an inference that these Plaintiffs'

supposed promise on May 22, 2018 was false and made without an intention to perform at the time.

In response to Plaintiffs' argument that Local Ventures and Lewis never actually reneged on the identified "promise," Counterclaimants argue Plaintiffs did so the moment they supposedly refused to pay certain outstanding invoices because of the parties' compensation dispute. (Opp. at 15:4-10.) But the SACC itself demonstrates that some of those funds were indeed used for OPEN expenses, and the rest were simply being held in trust—carefully accounted for and not cashed out or not used at all—in light of the agreed upon compensation Local Ventures believed Counterclaimants were wrongfully withholding. (SACC ¶¶ 64-66, 69, 71; *see also* RJN, Ex. 1 at 3, Ex. 2 at ¶ 17.) Indeed, these allegations actually undercut both fraudulent intent and actual falsity. This claim should be dismissed.

## V.    COUNTERCLAIMANTS' CDAFA CLAIMS FAIL.

### A.    Counterclaimants Concede that no Misconduct or Harm Occurred Within California.

The Court need not even wade into the substance of Counterclaimants' various CDAFA claims—brought under four different subsections with distinct requirements that the SACC mostly lumps together against four Plaintiffs—because the SACC does not allege any violation or injury occurred in California. The Opposition does not dispute the indisputable: the CDAFA only reaches acts or harm occurring within this State. (Opp. at 15:18-16:16.) *See also* Cal. Penal Code §§ 502(a); 27; 777; 778a; *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982). Instead, Counterclaimants point to their boilerplate venue allegation that "many of the events described below occurred in the City and County of San Francisco, California," but do not make even the slightest attempt to tie that assertion to any facts elsewhere described in the SACC, let alone any supposedly supporting their CDAFA claims.[1] (Opp. at 15:26-16:1; SACC ¶ 14.)

---

[1] Counterclaimants drop a cryptic footnote referencing Plaintiffs' allegation in the Amended Complaint that personal jurisdiction is proper with respect to their claims against OPEN because "its principal place of business was in San Francisco, California, during the material events giving rise to this lawsuit." (Opp. at 16 n.2; AC ¶ 23.) Counterclaimants declined to admit that allegation in their Answer, so they cannot rely on it. (ECF 66 ¶ 23.) Regardless, much of the

1    With respect to Local Ventures and Lewis, the Opposition does not dispute—so
2    effectively concedes—that the SACC alleges none of the relevant parties were domiciled or
3    present in California when the supposed violations occurred; the acts that allegedly constitute
4    violations of the CDAFA took place in Florida, not California; and any injury caused to
5    Counterclaimants as result was incurred either in Singapore or the Cayman Islands, given
6    Counterclaimants' alleged domiciles and place of business.  (Opp. at 15:18-16:8; Mot. at 17:15-
7    18:4.)  Regarding Sinkey and Smith, Counterclaimants reference their allegations that, on
8    information and belief, these Plaintiffs are California citizens residing San Francisco—but again,
9    they make no effort to connect those beliefs to any facts alleged in support of their CDAFA
10   claims.  (Opp. at 16:1-2; SACC ¶¶ 20, 22.)  The Opposition thus fails to address—so effectively
11   concedes—that the SACC does not allege Sinkey or Smith engaged in conduct within
12   California's borders violating the CDAFA, nor that any purported violation caused injury to
13   Counterclaimants in this State as a result.

14   Ignoring the substance of their pleadings, Counterclaimants also assert that at "the
15   pleadings stage, when no more specific information has been determined, the default location of
16   underlying allegations should be presumed to be the City and County of San Francisco based on
17   explicit allegations in the Counterclaims."  (Opp. at 16:2-8 (citing *Hawkins v. Kroger Co.*, 906
18   F.3d 763, 767 n.2 (9th Cir. 2018).)  Counterclaimants have apparently invented this presumption,
19   because *Hawkins* says nothing of the sort:  it simply recites the basic legal standard a district court
20   applies in ruling on a 12(b)(6) motion to dismiss that *well-pled factual allegations* must be
21   accepted as true.  *See Hawkins*, 906 F.3d at 767 n.2.  The SACC's venue allegations are mere
22   legal conclusions, and Counterclaimants do not point to a single factual allegation within the
23   SACC demonstrating acts or injury occurred in California for purposes of the CDAFA—there are
24   only allegations to the contrary.

25   Counterclaimants finally argue that "case law contemplates this sort of action," but the
26   authorities they cite in support are inapposite.  (Opp. at 16:9-16 (citing *Valentine v. NebuAd, Inc.*,

27
28   "events" described in the parties' respective complaints are distinct and Counterclaimants themselves allege OPEN is not located here.

- 6 -    REPLY ISO MOT. TO DISMISS SECOND
AMENDED COUNTERCLAIMS
CASE NO. 3:18-CV-05581-EDL

804 F. Supp. 2d 1022, 1024, 1026 (N.D. Cal. 2011); *Carrese v.Yes Online Inc.*, No. 16-CV-05301, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016).) *Valentine* found that a non-California resident may bring a claim under the CDAFA against a resident defendant for misconduct occurring within this State. *Id*. at 1024. *Carrese* likewise involved CDAFA claims brought by non-California residents against a California defendant, and plaintiffs alleged that "all of the communications at issue were [unlawfully] recorded by Defendant in California." *Carrese*, 2016 WL 6069198 at *4. The SACC contains no similar allegations and must be dismissed.

**B.     Counterclaimants' CDAFA Sections 502(c)(1) and 502(c)(4) Claims Fail.**

<u>Local Ventures and Lewis</u>.  Counterclaimants misconstrue Plaintiffs' first argument with respect to these Plaintiffs.  Plaintiffs contend Counterclaimants do not have standing under section 502(e)(1) of the CDAFA because the SACC does not sufficiently alleged damage or loss—they are not challenging Counterclaimants' allegations regarding the supposed conduct constituting the violation itself (though the SACC's "blog access" allegations are indeed specious).[2] Counterclaimants lack standing because their allegations that Local Ventures and Lewis's supposed access resulted in harm to OPEN's "business reputation and goodwill," loss of "intellectual property" and $150,000 in recovery costs are wholly conclusory and not plausibly alleged under Rule 8. (Mot. at 19:10-20:2.) The SACC does not contain any facts supporting these assertions, nor does it allege Counterclaimants incurred costs to verify that their blog was "accessed." *See* Cal. Penal Code § 502(e)(1) (damages include "any expenditure reasonably and necessarily incurred by the owner or lessee *verify* that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access") (emphasis added).

Next, Counterclaimants' only response to Plaintiffs' argument that the SACC insufficiently pleads Local Ventures or Lewis accessed OPEN's website and blog "without permission" is to emphasize the SACC's legal conclusions in bold-italics. (Opp. at 17:19-18:3

---

[2] Counterclaimants' cited authority addresses whether the plaintiff sufficiently alleged conduct that constituted a violation of the CDAFA, not damages. *See Regents of the Univ. of California v. Aisen*, No. 15-CV-1766, 2016 WL 4097072, at *8 (S.D. Cal. Apr. 18, 2016).

("'Local Ventures and Mr. Lewis **unlawfully accessed** the infrastructure to OPEN's content management system and blog website,' Dkt. 62 at ¶ 77 (emphasis added), and [] 'Mr. Lewis and Local Ventures **knowingly accessed** and **without permission**,' modified OPEN's website and blog.'") (emphasis in original).) Counterclaimants do not plead any facts in support of these legal conclusions, and the judicially noticeable facts and the SACC's own allegations reveal they are unsupported. Regarding intent, Counterclaimants simply reiterate their argument that Local Ventures and Lewis's supposed access was "without permission," and do not address at all section 502(c)(1)'s particular requirement that such access must *also* be done *in order to* defraud, extort, or wrongfully control or obtain OPEN's money, property or data. (Opp. at 18:4-17.) The SACC contains zero facts satisfying this intent requirement.

<u>Sinkey and Smith</u>. Counterclaimants' claims against Sinkey and Smith fail as well. The Opposition again focuses on Counterclaimants' allegations of the conduct that supposedly violated the CDAFA instead of the fact that damages are insufficiently pled for purposes of standing. (Opp. at 18:27-19:7.) The SACC alleges no facts suggesting that OPEN suffered damages resulting from denial of access to white papers or purported intellectual property of OPEN, and Counterclaimants do not plausibly allege their supposed $500,000 software expense was proximately caused by the alleged GitHub deletion rather than in response to Sinkey's copyright claims. *Cf. Synopsys*, 313 F. Supp. 3d at 1071. Regarding section 502(c)(1)'s intent requirement, Counterclaimants again simply restate the statute's "without permission" requirement and ignore that the SACC wholly fails to allege Sinkey or Smith supposedly deleted OPEN source code with the intent to defraud, extort, or wrongfully control or obtain OPEN's money, property or data. (Opp. at 19:8-21.) These claims must be dismissed.

**C.   Counterclaimants' CDAFA Claims Under Sections 502(c)(5) and 502(c)(7) Fail.**

The Opposition disregards Counterclaimants' own allegations and the express language of sections 502(c)(5) and 502(c)(7) of the CDAFA with respect to those claims. (Opp. at 19:28-20:24.) The SACC alleges Plaintiffs violated the CDAFA by supposedly accessing and/or altering, deleting, damaging or using OPEN's *data*—not disrupting or denying any "computer

1  service" of OPEN's (§ 502(c)(5)), or accessing without permission any "computer, computer
2  system, or computer network" of OPEN's (§ 502(c)(7)).  (SACC ¶ 108, 109, 76-77, 106-108, 53.)
3  *See also* Cal. Penal Code §§ 502(b)(4) (defining "computer services"); 502(b)(2), (5) (defining
4  "computer system" and "computer network").  Counterclaimants' argument that they sufficiently
5  allege a violation of section 502(c)(7) because Plaintiffs supposedly engaged in "various activities
6  that must be undertaken on a computer" misconstrues the statute—section 502(c)(7) requires that
7  Counterclaimants allege Plaintiffs accessed *OPEN*'s computer, computer system, or computer
8  network without permission.  Plaintiffs clearly had permission to access their own computers
9  when they supposedly accessed or interfered with OPEN's alleged data as alleged in the SACC.
10 *COR Sec. Holdings* is inapposite because the SACC's CDAFA allegations are expressly premised
11 on Plaintiffs' supposed access to data, not access to any computer, computer system, or computer
12 network of OPEN's.  *See COR Sec. Holdings Inc v. Banc of California, N.A.*, No. 17-CV-171403,
13 2018 WL 4860032, at *6 (C.D. Cal. Feb. 12, 2018).  These claims must be dismissed.

14 **VI.     COUNTERCLAIMANTS' CIVIL THEFT CLAIMS FAIL.**

15 Counterclaimants' argument that they sufficiently allege California's civil theft statute
16 applies to the conduct alleged in SACC fails for the same reason it does with respect to the
17 CDAFA.  Their sole, conclusory venue allegation is not supported by any facts related to their
18 civil theft claim, and the SACC does not allege that any misconduct by Local Ventures or Lewis,
19 nor any injury to Counterclaimants, occurred within this State.  *See* Cal. Penal Code §§ 27; 777;
20 778a; *Edgar*, 457 U.S. at 643.  The Opposition argues California law applies to Local Ventures
21 and Lewis's alleged misconduct because Lewis stipulated to personal jurisdiction in this case
22 after the Florida case was transferred here—but this stipulation was made for the sake of
23 efficiency and judicial economy so that the two cases could be related—it certainly was not an
24 admission that Lewis engaged in any alleged misconduct within this State.  (Opp. at 21:10-13.)
25 Counterclaimants' argument that stipulated consent to personal jurisdiction in California is
26 equivalent to a stipulation that California law applies to whatever claims are alleged in the
27 underlying action is downright frivolous.
28

- 9 -

REPLY ISO MOT. TO DISMISS SECOND
AMENDED COUNTERCLAIMS
CASE NO. 3:18-CV-05581-EDL

Finally, Counterclaimants contend they sufficiently allege felonious intent under both civil theft statutes because theft may be shown either where a defendant intends to deprive the owner of his or her property *or* to "deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment." (Opp. at 21:18-26.) Counterclaimants overlook the fact that there must still be *felonious intent* in *either* case, which cannot be established if a defendant has a "good faith claim of right to possession." *See* Cal. Penal Code §§ 496(a); 484; 511; *Barnett v. State Farm Gen. Ins. Co.*, 200 Cal. App. 4th 536, 543–45, (2011); *Sanchez v. Encinas*, 627 So. 2d 489, 490 (Fla.3d 1993). Counterclaimants assert that the Court should infer felonious intent from the SACC's allegations that Lewis sent a demand letter and refused to return the Ethereum, but these allegations only support Plaintiffs' argument that the SACC on its face only leads to the inference that Local Ventures and Lewis are holding the Ethereum based on a believed "right to possession." (SACC ¶¶ 114; 66; 69.) As such, the FACC's civil theft claims are not plausibly alleged and both must be dismissed.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that Counterclaimants' claims for breach of the duty of loyalty, negligence, promissory fraud, conversion, violation of the CDAFA and civil theft be dismissed with prejudice.

Dated: April 23, 2019                             GAW | POE LLP

                                                  By:   /s/ *Flora Vigo*
                                                  Flora Vigo
                                                  Attorneys for Plaintiffs & Counterclaim
                                                  Defendants Local Ventures &
                                                  Investments, LLC, Dennis Lewis,
                                                  Dustin Sinkey, Derek Waterman, and
                                                  Chase Smith